**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2863-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

LUIS DELCARMEN,
a/k/a LUIS DEL CARMEN,

    Defendant-Appellant.

_____

Submitted September 11, 2025 – Decided September 17, 2025

Before Judges Mawla and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Indictment No. 16-02-0150.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Richard Sparaco, Designated Counsel, on the brief).

Camelia M. Valdes, Passaic County Prosecutor, attorney for respondent (Ali Y. Ozbek, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Luis Delcarmen appeals from an April 8, 2024 order denying his petition for post-conviction relief (PCR). We affirm.

We previously recounted the facts when we upheld defendant's murder, robbery, and weapons convictions as well as his sentence. See State v. Delcarmen, No. A-0976-18 (App. Div. Feb. 23, 2022) (slip op. at 2-15). To summarize, defendant shot three people in front of a lounge, killing two and seriously injuring the third. Id. at 2-3. Defendant was identified through surveillance footage by the clothing he was wearing. Id. at 3. Witnesses who were at the lounge, including a security guard and one of the victims' friends, Ivan Santiago, gave police information to help identify defendant. Id. at 3-4. A detective also identified defendant based on the surveillance footage and community interactions. Id. at 3.

Prior to defendant's apprehension, police found the clothing worn by the shooter along with other items belonging to defendant at his mother's home. Id. at 4. While in police custody an officer heard defendant instruct a co-defendant not to say anything. Ibid. Prior to trial, an inmate housed with defendant revealed defendant admitted to the murders and was interested "in 'getting rid of' a witness." Id. at 5. Another inmate overheard the conversation. Ibid. Both inmates testified for the State. Id. at 10.

A-2863-23

Defendant's trial lasted twelve days and the State presented testimony from over twenty witnesses. Id. at 5. The State also presented expert testimony and the surveillance footage of the shooting showing the clothing worn by the shooter, which was corroborated by witnesses, and the clothing recovered by police. Id. at 6, 8-9.

On appeal, defendant challenged the sufficiency of the evidence and argued no physical evidence linked him to the crime. Id. at 15-16, 26. We roundly rejected defendant's arguments noting "there was ample [witness, physical, and electronic] evidence to support defendant's conviction on all the charges." Id. at 28.

Defendant's PCR petition raised several claims, including as relevant here, that defense counsel was ineffective for failing to: prepare him to testify; explain the consequences of waiving the right to testify; and explain the decision to remain silent belonged exclusively to defendant, instead pressuring him not to testify. Defendant certified he wanted to testify because he was innocent, had an alibi, and was mistakenly identified as the shooter.

The PCR petition also alleged counsel was ineffective for failing to investigate and call Silvia Mejia and Ivan Santiago as witnesses at trial. Both

witnesses identified the shooter as a Black male. Defendant asserted he could not be the shooter because he is a light-skinned Hispanic man.

The PCR judge rejected both arguments. She had also served as the trial judge and found the argument related to the right to testify lacked merit because the trial record reflected defendant "made a knowing, voluntary, and intelligent waiver of his right to testify on his own behalf." After the State rested, the judge conducted an extensive voir dire about whether defendant was waiving his right to testify. The judge recounted that under oath, defendant confirmed: he had reviewed the form memorializing his right to testify with defense counsel; counsel explained defendant's right to remain silent or testify, and defendant wished not to testify based on knowledge of these rights; he had sufficient time to discuss his decision with defense counsel and consider the jury charge instructing the jury of defendant's election not to testify; and he was not forced or threatened into waiving the right to testify, or signing the waiver form.

The judge concluded defendant did not establish a prima facie claim of ineffective assistance of counsel. Defendant's claim was self-serving because "at no point [during the voir dire] did [defendant] indicate [defense counsel] failed to inform him of his rights to remain silent or testify on his own behalf or that he was forced or threatened into not testifying by [defense counsel] . . . ."

4

The judge also rejected defendant's ineffective assistance claims related to his counsel's alleged failure to call the witnesses who misidentified him as a Black male. She found neither Mejia nor Santiago described defendant as a Black male because Mejia told the investigating detective defendant was "a medium-skinned male and no evidence exists to indicate that Santiago . . . provided police with a description of [defendant]'s skin tone."

Even if both witnesses had described the shooter as a Black male, there were multiple trial witnesses who identified defendant as the shooter, as well as "video and still images that clearly show [defendant]'s face and clothing." Therefore, defense counsel's decision not to call these witnesses "was a sound, strategic decision, given the circumstances and . . . their failure to testify" did not prejudice defendant.

Defendant raises the following points on appeal:

> POINT I – DEFENDANT WAS ENTITLED TO AN EVIDENTIARY HEARING WHERE HE ESTABLISHED A PRIMA FACIE CASE OF INEFFECTIVE ASSISTANCE OF COUNSEL IN THE FAILURE OF TRIAL COUNSEL TO ADVISE HIM THAT IT WAS HIS CHOICE OF WHETHER OR NOT TO TESTIFY AT TRIAL, AND HIS WAIVER OF HIS RIGHT TO TESTIFY WAS NOT MADE INTELLIGENTLY, KNOWINGLY OR VOLUNTARILY.

POINT II – DEFENDANT WAS ENTITLED TO AN EVIDENTIARY HEARING WHERE HE ESTABLISHED A PRIMA FACIE CASE OF INEFFECTIVE ASSISTANCE OF COUNSEL IN THE FAILURE OF TRIAL COUNSEL TO CALL WITNESSES WHO WOULD HAVE ESTABLISHED HIS DEFENSE OF MISIDENTIFICATION.

I.

We review the denial of PCR without an evidentiary hearing de novo. State v. Jackson, 454 N.J. Super. 284, 291 (App. Div. 2018). To win relief based on ineffective assistance of counsel, a defendant must demonstrate that both: "counsel's performance was deficient" and "counsel's errors were so serious as to deprive the defendant of a fair trial . . . ." Strickland v. Washington, 466 U.S. 668, 687 (1984); see also State v. Fritz, 105 N.J. 42, 52 (1987).

Under the first prong, counsel's representation must be objectively unreasonable. State v. Pierre, 223 N.J. 560, 578 (2015). Under the "'second, and far more difficult, prong of the' Strickland standard," State v. Gideon, 244 N.J. 538, 550 (2021) (quoting State v. Preciose, 129 N.J. 451, 463 (1992)), a defendant "must show that the deficient performance prejudiced the defense." State v. O'Neil, 219 N.J. 598, 611 (2014) (quoting Strickland, 466 U.S. at 687).

To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of

6

A-2863-23

the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Gideon, 244 N.J. at 550-51 (alteration in original) (quoting Strickland, 466 U.S. at 694).

Proof of prejudice under Strickland's second prong "is an exacting standard." Id. at 551 (quoting State v. Allegro, 193 N.J. 352, 367 (2008)). A defendant seeking PCR "must 'affirmatively prove prejudice'" to satisfy the second prong of the Strickland standard. Ibid. (quoting Strickland, 466 U.S. at 693). "[C]omplaints 'merely of matters of trial strategy' will not serve to ground a constitutional claim of inadequacy . . . ." Fritz, 105 N.J. at 54 (quoting State v. Williams, 39 N.J. 471, 489 (1963)). Prejudice is not presumed, id. at 52, and a defendant must demonstrate "how specific errors of counsel undermined the reliability" of the proceeding. United States v. Cronic, 466 U.S. 648, 659 n.26 (1984).

This is because there is a strong presumption counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690. "[A] defense attorney's decision concerning which witnesses to call to the stand is 'an art[]' and a court's review of such a decision should be 'highly deferential.'" State v. Arthur, 184 N.J. 307, 321 (2005) (internal citation omitted) (quoting Strickland, 466 U.S. at

689, 693). The decision whether to call a witness is generally informed by the testimony expected to be elicited and the possibility of impeachment. Id. at 320-21.

Pursuant to these principles, we affirm the denial of defendant's PCR petition substantially for the reasons expressed in the PCR judge's oral opinion. We add the following comments regarding Santiago and Mejia.

Initially, we observe the investigating detective's report contained in the record recounts that both Santiago and Mejia identified the shooter as a Black male. Although the PCR judge overlooked this fact, we are unconvinced it would help defendant hurdle the second Strickland prong, or that an evidentiary hearing is required because Santiago testified at trial, was subject to cross-examination, and never testified about the race of the shooter either on direct or cross-examination.

Defense counsel cross-examined Santiago about the more important issue of identification related to a photo array police had conducted with him. Santiago's cross-examination was related to and attacked the evidence elicited from him by the State and was a matter of trial strategy. We reach a similar conclusion regarding Mejia, who was never called by the State, and was even more tangential to its case.

A-2863-23

The record evidence, including the surveillance video, does not convince us the failure to probe the race of the shooter, deprived defendant of his right to fair trial. Simply put, the strength of the State's case lay elsewhere. As we noted in defendant's prior appeal:

> The State adduced testimony from over twenty witnesses, including a victim, club patrons, club employees, detectives, police officers, medical experts, identification witnesses, and jailhouse informants. The State also provided physical evidence, including defendant's clothing from the night of the incident, his sneakers, phone, and passport. Surveillance footage and stills from the video were also provided to the jury.
>
> [Delcarmen, slip op. at 28.]

Having reviewed the trial testimony and evidence, for a second time on this appeal, we remain unconvinced adducing testimony from Santiago and Mejia regarding the shooter's race would have overcome the weight of the State's evidence. The absence of this testimony did not prejudice the outcome or deprive defendant of a fair trial and instead fell within defense counsel's strategic prerogative.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division